## McCONNELL, ADMINISTRATOR, *v.* AMERICAN NATIONAL BANK.

[No. 8,639. Filed January 9, 1914. Rehearing denied May 26, 1914. Transfer denied June 22, 1915.]

1. MORTGAGES.—*Equitable Assignment.—Sale of Mortgage Note.*— The sale of a note secured by mortgage operates as an equitable assignment of the mortgage and thereafter the seller of the note holds the mortgage as trustee for such purchaser. p. 323.

2. BILLS AND NOTES.—*Payment.—Acceptance of Forged Note.*—The debt evidenced by a note secured by mortgage is not discharged by the acceptance in its stead, with the belief that it is genuine, of a new note for a greater amount, and bearing the name of a solvent and sufficient surety, when in fact such new note is a forgery. p. 323.

3. MORTGAGES.— *Record.— Unauthorized Cancellation.— Rights of Original and Subsequent Mortgagees.*—As between a mortgagee, whose mortgage has been discharged of record without his fault and by an unauthorized third person, and one who has been induced by such cancellation to believe that the mortgage was cancelled in good faith, and has dealt with the property by purchas-

ing the title or accepting a mortgage thereon as security for a loan, the equities are balanced and the rights under the prior mortgage remain, notwithstanding such apparent discharge.    p. 323.

4.  MORTGAGES.— *Record.*— *Cancellation.*— *Rights of Original and Subsequent Mortgagees.*—Where a mortgagee is in any way responsible for the mortgage being released of record, or if such release is procured through the fraud, incaution, credulity or misplaced confidence of the mortgagee, he is estopped in equity from asserting the priority of his mortgage as against one who has innocently dealt with the property in the belief that the mortgage was satisfied.    p. 324.

5.  MORTGAGES.—*Cancellation of Record.—Reinstatement.—Priority as to Creditors Subsequent to Cancellation.*—Where, following the cancellation of a mortgage induced by the belief that a note given by the mortgagor in lieu of the mortgage note was valid, it developed that such new note was a forgery, and the bank entitled to such mortgage security brought an action to procure the reinstatement of the record of such mortgage, the court properly held that such mortgage when reinstated should be inferior to the lien of a mortgage taken in good faith by another bank subsequent to such cancellation in the belief that the property was then unincumbered; and the holding, as against persons who became general creditors of the mortgagor subsequent to such cancellation, that the lien of such mortgage was entitled to priority, was also correct in view of the fact that such general creditors had no knowledge at or before the time the loans were made by them that such mortgage had been cancelled of record, and were not thereby induced to make the loans, and the acts of the plaintiff were not such as to constitute an estoppel *in pais.*    p. 324.

6.  ESTOPPEL.—*Estoppel as a Defense.—Pleading.—Action Against Administrator.*—While estoppel is an affirmative defense, and, as a general rule, must be specially pleaded, in an action against an administrator evidence of estoppel is admissible under the general denial.    p. 325

7.  MORTGAGES.—*Reinstatement of Record.—Estoppel.—Complaint.* —The facts disclosed by a complaint to procure the reinstatement of the record of a mortgage, the cancellation of which had been induced by the delivery to plaintiff of a forged note which plaintiff accepted in the belief that it was valid, and after due investigation as to the value of the surety thereon, did not show facts to constitute an estoppel as against persons who became general creditors of the mortgagor subsequent to such cancellation, and hence was not insufficient on the ground that it disclosed an affirmative defense in favor of such creditors.    p. 326.

From Gibson Circuit Court; *Herdis F. Clements,* Judge.

Action by the American National Bank against Abner G. McConnell, administrator of the estate of Leslie C. Hunter, 'deceased. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*John & Johnson* and *Embree & Embree,* for appellant.
*Harvey Harmon,* for appellee.

LAIRY, C. J.—Appellee brought this suit to reinstate a certain mortgage on real estate owned by Leslie C. Hunter in his lifetime. The case was tried by the court and appellee prevailed. The court made a special finding of facts from which it appears that on December 27, 1909, Leslie C. Hunter purchased a part of lot 44 in Owensville from John C. Kendle for the price of $3,000 and that as a part of the purchase price he executed a note to Kendle for $2,000 and secured the same by a mortgage, on the lot purchased, signed by himself and his wife, Lasia L. Hunter; that on January 3, 1910, Kendle sold this note to appellee bank for the sum of $2,000 cash; that the mortgage was recorded by Kendle but that it was not assigned to the bank. The note was endorsed by Kendle in blank.

Shortly before the note became due Kendle called upon the bank and requested that when the note was paid he should be informed of the fact. After the note became due and after Leslie C. Hunter had been three times notified by the bank, he wrote a letter to the bank requesting it to send him a note for the amount of $2,500 due in one year and promising to get one Harry O. Pollard to sign it as security. In response to this letter the bank sent this note to Leslie C. Hunter, who returned it to the bank on January 25, 1911, signed by himself and purporting to be signed by Harry O. Pollard. The bank investigated the financial standing of Harry O. Pollard and found that he was solvent and that his signature to the note would make it good. On January 26, 1911, the bank, believing that the name of Harry O. Pollard

signed to the note was his genuine signature, accepted the note in payment of the note of $2,000 secured by mortgage and endorsed to the bank by Kendle, and notified Kendle by letter that the note had been paid, whereupon Kendle on January 2, 1911, released the mortgage of record. The remainder of the proceeds of the $2,500 note, after deducting the amount of the $2,000 note and accrued interest, was credited by the bank to the checking account of Leslie C. Hunter. The name of Harry O. Pollard as signed to the $2,500 note was not his genuine signature but was a forgery. On January 17, 1912, Leslie C. Hunter committed suicide and on January 25, 1912, appellant Abner D. McConnell was appointed administrator for his estate which is insolvent.

The court further finds that on March 23, 1911, after the mortgage securing the $2,000 note had been released by Kendle, Leslie C. Hunter borrowed $2,000 from the Citizen's Trust and Savings Bank of Princeton and, to secure the same executed a mortgage in which his wife joined, on the real estate which he had formerly mortgaged to secure the note sold by Kendle to appellee bank. On April 10, 1911, Leslie C. Hunter borrowed $400 from Elza Mounts and on September 18, 1911, he borrowed $2,650 from the First National Bank of Poseyville, and, on October 10, 1911, he borrowed $275 from the Owensville Building and Loan Association. For each of the sums so borrowed he executed his note and each of the notes so executed bears the name of Harry O. Pollard as security and the $2,650 note also bore the name of Harvey Knowles as surety, but the names of the sureties to all of these notes are forgeries. These notes have all been filed and are pending as claims against the estate of Leslie C. Hunter.

We have not set out the facts as fully as they are shown in the finding of the court but have stated only so much as is necessary to a proper understanding of the case.

Upon the facts found the court stated as its conclusions of law that the American National Bank of Princeton was the

owner and as such was entitled to the same rights in the note and mortgage sought to be reinstated as was possessed by Kendle prior to the assignment; that the note and mortgage should each be reinstated and should be in full force and effect; that the mortgage so reinstated should be a lien on the real estate described therein, inferior to the lien of the mortgage in favor of the Citizen's Trust and Savings Bank and superior to any claims of Elza Mounts, The First National Bank of Poseyville and the Owensville Building and Loan Association.

The sale of the note by Kendle to the bank amounted to an equitable assignment of the mortgage given to secure it, and thereafter Kendle held the mortgage as a trustee

1. for appellee bank. *Burton* v. *Baxter* (1844), 7 Blackf. 297; *Reeves* v. *Hayes* (1884), 95 Ind. 521; *Thomson* v. *Madison Bldg., etc., Assn.* (1885), 103 Ind. 279, 2 N. E. 735.

The debt evidenced by the original note was not paid

2. by the forged note delivered by Hunter and accepted by the bank. The bank accepted this note with the belief that it was genuine and its officers were thereby misled and induced to notify Kendle that the original note of $2,000 had been paid and relying on such statement he cancelled the mortgage. After the cancellation of this mortgage, the Citizen's Trust and Savings Bank loaned $2,000 to Hunter and took a mortgage on this same real estate as security for the loan having no notice of the fraud that had been practiced in procuring the release of the former mortgage and believing that such mortgage had been in fact satisfied.

As between a mortgagee whose mortgage has been discharged of record solely through the act of a third party which act was unauthorized by the mortgagee and for

3. which he was in no way responsible, and a person who has been induced by such cancellation to believe that the mortgage has been cancelled in good faith, and has dealt with the property by purchasing the title or accepting a mortgage thereon

as security for a loan, the equities are balanced. In such case the rights will be settled in the order of time and the prior mortgage must remain despite the apparent discharge. *Harris* v. *Cook* (1877), 28 N. J. Eq. 345; *De St. Romes* v. *Blanc* (1868), 20 La. Ann. 424, 96 Am. Dec. 415; 27 Cyc. 1225. If, however, the mortgagee is in any way responsible for the mortgage being released of record or, if the release of record is procured through the neglect, incaution, credulity or misplaced confidence of the mortgagee, a different rule will govern in determining the equities between the mortgagee and one who has innocently dealt with the property in the belief that the mortgage was satisfied. In such a case the mortgagee is estopped in equity from asserting the priority of his mortgage. When one of two innocent parties must suffer loss, it must fall upon that one who by incaution or misplaced confidence occasioned it, or who placed it in the power of a third party to perpetrate the fraud which occasioned the loss. *City Council, etc.* v. *Ryan* (1884), 22 S. C. 339, 53 Am. Rep. 713; *Heyder* v. *Excelsior Bldg., etc., Co.* (1886), 42 N. J. Eq. 403, 8 Atl. 310, 59 Am. Rep. 49; *Wittenbrock* v. *Parker* (1894), 102 Cal. 93, 36 Pac. 374, 41 Am. St. 172, 24 L. R. A. 197; 27 Cyc. 1226.

The court undoubtedly made a correct application of these rules in holding that the lien of the mortgage of appellee when reinstated should be inferior to the lien of the mortgage of the Citizen's Trust and Savings Bank, and both parties to this appeal in effect concede that this conclusion is right, but appellant takes the position that the same rules should be applied in determining the priority of the lien of this mortgage when reinstated as between the mortgagee and the general creditors of the estate of Leslie C. Hunter. It does not appear that any of the parties who made loans to Leslie C. Hunter after the mortgage securing the note held by the American National Bank was cancelled, had any knowledge at or before the time such loans were made, that this mortgage had been released of record, or that

they or any of them were induced to extend credit on the faith of the real estate being unincumbered. In fact the special finding shows that before any of these loans were made the real estate in question had been remortgaged for $2,000 to the Citizen's Trust and Savings Bank of Princeton. The debt secured by the original mortgage was not paid and discharged by the forged note given to the American National Bank as payment, and the release of the mortgage given to secure that debt was obtained by fraud. As between the mortgagor and the holder of the note secured by the mortgage, the latter was clearly entitled to have the cancellation of the mortgage set aside and its lien reëstablished. This right also exists as against the creditors of the mortgagee unless facts appear that are sufficient to constitute an estoppel *in pais*. The fact that the mortgage given to secure the note held by the American National Bank was cancelled when in fact the debt was not paid, and the further fact that the responsibility for such cancellation can be traced to incautious or negligent conduct on the part of the bank are not, of themselves, sufficient to create an estoppel as against the bank and in favor of the subsequent general creditors of the mortgagor. To create such estoppel, it must further appear that such subsequent creditor knew that the mortgage had been cancelled, and believed that it had been satisfied, and that he relied on such belief, and was induced thereby to extend credit to the mortgagor.

It is evident, we think, from what has been said, that the trial court properly reached the conclusion that the facts found did not show an estoppel as against the mortgagee and that the mortgage should be reinstated and held to be superior lien to that of the general creditors named in the special finding.

6. Estoppel is an affirmative defense, and as a general rule must be specially pleaded. This case being a suit against an administrator, evidence of estoppel could be admitted under the general denial by virtue of our

statute. The complaint on its face did not disclose facts sufficient to show estoppel as against the general creditors

7. named in the special finding, and for that reason it can not be held insufficient upon the ground that it disclosed an affirmative defense in favor of such creditors.

The court did not err in overruling the demurrer to the complaint and the conclusions of law were correct. Judgment affirmed.

Note.—Reported in 103 N. E. 809. As to revival of mortgage when satisfied by mistake, see 5 Am. St. 703. As to the right to show estoppel under general denial in replevin, see 20 Ann. Cas. 300. As to the right to reinstatement of mortgage released or discharged by mistake, see 58 L. R. A. 788; 26 L. R. A. (N. S.) 816; 28 L. R. A. (N. S.) 825, 904. See, also, under (1) 27 Cyc. 1287; (2) 7 Cyc. 1013; (4, 7) 27 Cyc. 1225; (5) 27 Cyc. 1433; (6) 16 Cyc. 806.